**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ANTARES MANAGEMENT LLC and
SARANSH SHARMA,

                    Plaintiffs,

        -against-

GALT GLOBAL CAPITAL INC., GLOBAL
INNOVATION FUND, LTD., GLOBAL
INNOVATION SPV I, LTD., and GARY
BARTHOLOMEW,

                    Defendants.

Case No. 12 Civ. 6075
(TPG) (RLE)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Justin M. Sher
Michael Tremonte
SHER TREMONTE LLP
41 Madison Avenue, 41st Floor
New York, New York 10010
Tel:  212.202.2600

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

FACTUAL BACKGROUND ....................................................................................2

      A.   The Parties Agree to Work Together ...................................................2

      B.   Defendants Reject a $310 Million Investment to Avoid Paying Plaintiffs ...........4

      C.   Defendants Breach the Non-Circumvention Agreement .......................5

      D.   Plaintiffs File this Action and Serve All Defendants .............................6

ARGUMENT ...........................................................................................................7

      I.   THIS COURT HAS PERSONAL JURISDICTION OVER GIF AND THE SPV ............................................................................................7

         a.   Applicable Standards Under Rule 12(b)(2) .....................................7

         b.   Galt and Its Affiliates Consented to Jurisdiction in New York .......8

         c.   GIF and the SPV Are Engaged in Continuous Business in the State ........................................................................................10

         d.   Plaintiffs' Claims Arise Out of GIF and the SPV's Contacts in the Forum ..................................................................................12

         e.   Jurisdiction Over GIF and the SPV Comports with Due Process ...13

      II.   PLAINTIFFS HAVE SERVED BARTHOLOMEW AND THE SPV ...............14

      III.   PLAINTIFFS HAVE STATED CLAIMS AGAINST DEFENDANTS ............14

         a.   Breach of Contract Claims ...........................................................15

         b.   Breach of Fiduciary Duty Claims .................................................18

         c.   Quantum Meruit, Unjust Enrichment, and Estoppel Claims ..........19

         d.   Defamation Claims .......................................................................20

         e.   Tortious Interference Claims .........................................................22

         f.   Civil Conspiracy Claims ...............................................................23

IV.   PLAINTIFFS' FINDER'S FEE CLAIMS DO NOT VIOLATE THE
        STATUTE OF FRAUDS ................................................................................23

        a.   The Statute of Frauds Does Not Apply ............................................24

        b.   Defendants' E-Mails Satisfy the Statute of Frauds..........................26

V.   PLAINTIFFS MAY RECOVER EVEN IF THEY WERE NOT
        REGISTERED BROKERS ..........................................................................28

CONCLUSION....................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                  <u>Pages</u>

*Albert v. Loksen*,
239 F.3d 256 (2d Cir. 2001) ........................................................................ 22

*Amusement Indus., Inc. v. Stern*,
693 F. Supp. 2d 301 (S.D.N.Y. 2010) ........................................................ 23

*Apfel v. Prudential-Bache Sec. Inc.*,
81 N.Y.2d 470, 616 N.E.2d 1095 (1993) .................................................... 20

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................... 15

*Bicicletas Windsor, S.A. v. Bicycle Corp. of Am.*,
783 F. Supp. 781 (S.D.N.Y. 1992) .............................................................. 11

*Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*,
775 F. Supp. 2d 730 (S.D.N.Y. 2011) ........................................................ 21

*Braverman v. Metropolis Bowling Centers, Inc.*,
18 A.D.2d 1089, 239 N.Y.S.2d 581 (2d Dep't 1963) ................................. 25

*Buffalo Forge Co.*,
555 F. Supp. 892, (W.D.N.Y. 1983), *aff'd*, 717 F.2d 757 (2d Cir. 1983) ................................... 29

*Bushkin Assocs., Inc. v. U. S. Filter Corp.*,
79 A.D.2d 367, 436 N.Y.S.2d 651 (1st Dep't 1981) *aff'd*, 55 N.Y.2d 763, 431 N.E.2d 970
(1981) ............................................................................................................ 25

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
547 F.3d 115 (2d Cir. 2008) ........................................................................ 22

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ................................................................. 18, 28

*Clivner v. Ackerman*,
51 Misc. 2d 856, 274 N.Y.S.2d 112 (N.Y. Sup. Ct. 1966), *aff'd*, 30 A.D.2d 642, 291 N.Y.S.2d
759 (1st Dep't 1968) .................................................................................... 24

**Cases** *(continued)*                                                                                                    **Pages**

*Cohen v. Davis*,
926 F. Supp. 399 (S.D.N.Y. 1996) .................................................................................. 22

*Contractual Obligation Productions, LLC v. AMC Networks, Inc.*,
No. 04 Civ. 2867 (BSJ) (HBP), 2006 WL 6217754 (S.D.N.Y. Mar. 31, 2006) ......................... 20

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95, 103 (2d Cir. 2006) .................................................................................... 8

*D'Annunzio v. Ayken, Inc.*,
No. 11 Civ. 3303 (WFK) (WDW), 2012 WL 2906248 (E.D.N.Y. July 17, 2012) ................ 20, 21

*DeHuff v. Digital Ally, Inc.*,
No. 3:08 Civ. 327 (TSL) (JCS), 2009 WL 4908581 (S.D. Miss. Dec. 11, 2009) ....................... 29

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001) ....................................................................................... 7, 8

*Excel Mktg. Solutions, Inc. v. Direct Fin. Solutions, LLC*,
No. 3:11 Civ. 0109-D, 2011 WL 1833022 (N.D. Tex. May 13, 2011) .................................... 8, 9

*Fishoff v. Coty, Inc.*,
634 F.3d 647, 653 (2d Cir. 2011) .................................................................................. 15

*Foundation Ventures, LLC v. F2G, Ltd.*,
No. 08 Civ. 10066 (PKL), 2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010) ...................... 28, 29, 30

*Four Star Capital Corp. v. Nynex Corp.*,
183 F.R.D. 91 (S.D.N.Y. 1997) ................................................................................... 26

*Freedman v. Chem. Const. Corp.*,
43 N.Y.2d 260, 372 N.E.2d 12 (N.Y. 1977) .................................................................. 24

*Gaind v. Pierot*,
No. 04 Civ. 9407 (TPG), 2006 WL 846268 (S.D.N.Y. March 31, 2006) (Greisa, J.) ........... 12, 13

*Gardner v. Alexander-Rent-A-Car*,
28 A.D.2d 667, 280 N.Y.S.2d 595 (1st Dep't 1967) ...................................................... 20

**Cases** *(continued)*                                                                    **Pages**

*Gasperini v. Center for Humanities, Inc.,*
518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ............................................. 20

*Hiller v. Franklin Mint, Inc.*,
485 F.2d 48 (3d Cir. 1973) ......................................................................................... 24

*Hofmann v. Dist. Council 37, Am. Fed'n of State, County, & Mun. Employees, AFL-CIO,*
No. 99 Civ. 8636 (KMW) (JCF), 2002 WL 31045858 (S.D.N.Y. May 9, 2002) ......................... 22

*In re Optimal U.S. Litig.*,
813 F. Supp. 2d 351 (S.D.N.Y. 2011) ...................................................................... 8, 10

*India.com, Inc. v. Dalal*,
324 Fed. Appx. 59 (2d Cir. 2009) .............................................................................. 16

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*,
24 N.Y.2d 372, 248 N.E.2d 576 (1969) ....................................................................... 26

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945) ................................................................................................. 13

*Kelly v. Schmidberger*,
806 F.2d 44 (2d Cir.1986) ......................................................................................... 21

*Kernan v. Kurz–Hastings, Inc.*,
175 F.3d 236 (2d Cir.1999) ......................................................................................... 8

*Khreativity Unlimited, Inc. v. Mattel, Inc.*,
242 F.3d 366 (2d Cir. 2000) ...................................................................................... 26

*Kidz Cloz, Inc.v. Officially For Kids, Inc.*,
320 F. Supp. 2d 164 (S.D.N.Y. 2004) .......................................................................... 19

*Kingsepp v. Wesleyan Univ.*,
763 F. Supp. 22 (S.D.N.Y. 1991) ................................................................................ 11

*Kreutter v. McFadden Oil Corp.*,
71 N.Y.2d 460, 467, 522 N.E.2d 40 (1988) .................................................................... 3

**Cases** *(continued)*                                                                                                        **Pages**

*Landoil Resources Corp. v. Alexander and Alexander Svcs., Inc.*,
918 F.2d 1039 (2nd Cir. 1990)............................................................................. 10

*Laufer v. Ostrow*,
55 N.Y.2d 305, 434 N.E.2d 692 (N.Y. 1982) ........................................................ 11

*Learning Annex Holdings, LLC v. Rich Global, LLC*,
No. 09 Civ. 4432 (SAS), 2011 WL 2732550 (S.D.N.Y. July 11, 2011) ...................... 27

*Liberman v. Gelstein*,
80 N.Y.2d 429, 590 N.Y.S.2d 857, 605 N.E.2d 344 (N.Y. 1992)............................. 21

*Marcella v. ARP Films, Inc.*,
778 F.2d 112 (2d Cir. 1985)................................................................................. 20

*Matson v. Board of Educ. of City School Dist. of New York*,
631 F.3d 57 (2d Cir. 2011).................................................................................. 14

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Technologies Inc.*,
854 A.2d 121 (Del. Ch. 2004).............................................................................. 19

*Morris Cohon & Co. v. Pennsylvania Coal & Coke Corp.*,
10 A.D.2d 667, 197 N.Y.S.2d 125 (1st Dep't 1960) .............................................. 25

*Morris Cohon & Co. v. Russell*,
23 N.Y.2d 569, 245 N.E.2d 712, 297 N.Y.S.2d 947 (N.Y.1969)........................ 24, 27

*Muente v. M1 Support Services, L.P.*,
No. 11 Civ. 6420 (TPG), 2012 WL 3758448 (S.D.N.Y. Aug. 30, 2012) (Griesa, J.) ......... 7

*Nuvest S.A. v. Gulf & W. Industries, Inc.*,
649 F.2d 943 (2d Cir. 1981)................................................................................. 12

*Parke-Bernet Galleries v. Franklyn*,
26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (N.Y. 1970)............................. 12

*Rail Europe, Inc. v. Rail Pass Express, Inc.*,
No. 94 Civ. 1506 (PKL), 1996 WL 157503 (S.D.N.Y. Apr. 3, 1996)......................... 24

**Cases** *(continued)* **Pages**

*Roby v. Corp. of Lloyd's,*
996 F.2d 1353 (2d Cir. 1993)..................................................................................... 8

*Scott v. Rosenthal*,
No. 97 Civ. 2143 (LLS), 2001 WL 282712 (S.D.N.Y. Mar. 22, 2001)....................... 19

*Shelton v. Sethna*,
No. 10 Civ. 4128 (TPG), 2012 WL 1022895 (S.D.N.Y. Mar. 26, 2012) (Greisa, J.)................. 15

*Sloan v. Stefurak*,
32 B.R. 607 (Bankr. E.D.N.Y. 1983) (*In re Sloan*) ..................................... 25

*Stern v. Cosby*,
645 F. Supp. 2d 258 (S.D.N.Y. 2009)......................................................................... 21

*Stevens v. Publicis, S.A.,*
50 A.D.3d 253, 854 N.Y.S.2d 690 (1st Dep't 2008) ................................................. 26

*Stiefvater Real Estate, Inc. v. Hinsdale,*
812 F.2d 805 (2d Cir. 1985)........................................................................................ 16

*Transparent Value, L.L.C. v. Johnson,*
93 A.D.3d 599, 941 N.Y.S.2d 96 (1st Dep't 2012) .................................................. 28

*Trueforge Global Mach. Corp. v. Viraj Group,*
84 A.D.3d 938, 923 N.Y.S.2d 146 (2d Dep't 2011) ................................................. 26

*Trylon Realty Corp. v. Di Martini,*
34 N.Y.2d 899, 316 N.E.2d 718 (N.Y. 1974) ........................................................... 15

*USHA (India), Ltd. v. Honeywell Int'l, Inc.,*
421 F.3d 129 (2d Cir. 2005)........................................................................................ 14

*Vioni v. American Capital Strategies Ltd.,*
No. 08 Civ. 2950 (PAC), 2009 WL 174937 (S.D.N.Y. Jan. 23, 2009) .................. 27, 30

*Wiwa v. Royal Dutch Petroleum Co.,*
226 F.3d 88 (2d Cir. 2000)......................................................................................... 11

**Cases** *(continued)*                                                                                    **Pages**

*Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*,
736 F. Supp. 2d 661 (W.D.N.Y. 2010) ........................................................................... 17

## Statutes & Rules                                                                                      **Pages**

FED. R. CIV. P. 4 ............................................................................................................ 4, 14

FED. R. CIV. P. 8 ............................................................................................................ 8, 18

FED. R. CIV. P. 12 .......................................................................................................... 7, 14

N.Y. C.P.L.R. § 301 (McKinney 2012) ....................................................................... 10, 12

N.Y. C.P.L.R. § 302 (McKinney 2012) ....................................................................... 12, 13

N.Y. GEN. OBLIG. LAW § 5-701 (McKinney 2012) ......................................................... 24, 25, 26

Plaintiffs Antares Management LLC ("Antares") and Saransh Sharma ("Sharma," and together, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants Galt Global Capital, Inc. ("Galt"), Global Innovation Fund, Ltd. ("GIF"), Global Innovation SPV 1, Ltd. (the "SPV") and Gary Bartholomew's ("Bartholomew," and collectively, "Defendants") Motion to Dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

This action arises from Defendants' refusal to pay Plaintiffs an agreed upon finder's fee and from Defendants' solicitation of Plaintiffs' business contacts in violation of their express agreement. Plaintiffs seek compensation for the work they performed in connection with their joint venture with Defendants and the business opportunities they lost as a result of Defendants' tortious actions.

Defendants seek to dismiss the Amended Complaint through a "kitchen-sink" approach that presents multiple flawed, premature and unsupported arguments. First, although they do not deny that Plaintiffs have personal jurisdiction over Galt and Bartholomew, Defendants contend the Court lacks jurisdiction over the funds they managed, GIF and the SPV. But Galt executed agreements on behalf of itself and its "affiliates" that expressly designate New York as the forum for disputes among the parties. Moreover, both GIF and the SPV conducted operations and raised funds in New York City, and this case arises directly from the Defendants' dealings with Plaintiffs in New York. The Court therefore has jurisdiction over GIF and the SPV.

Second, Defendants ask the Court to dismiss the Amended Complaint against Bartholomew and the SPV because they have not been served. This argument is now moot. Notwithstanding Bartholomew's efforts to evade service, both he and the SPV have now been served.

Third, Defendants contend that Plaintiffs have failed to allege all elements of each of their claims and, in essence, seek to litigate the underlying facts of Plaintiffs' claims before any discovery has taken place. Defendants' arguments are thus both meritless and premature.

Fourth, Defendants seek dismissal of Plaintiffs' finder's-fee claims on the basis of the Statute of Frauds. That argument should also fail. New York's Statute of Frauds does not apply to Plaintiffs' agreement to introduce Defendants to potential passive investors. Even if the Statute of Frauds did apply, it would be satisfied by Defendants' e-mails.

Fifth and finally, Defendants' attempt to characterize Plaintiffs as brokers rather than finders and argue the Amended Complaint should be dismissed because Plaintiffs were not registered as brokers throughout the entire relevant period. Plaintiffs were not required to maintain their registrations because they were tasked with introducing investors to Defendants, not with brokering deals, a distinction repeatedly recognized by courts. Moreover, even if Defendants were correct that Plaintiffs were acting as unregistered brokers, Defendants were aware of their status and cannot now seek to avoid their contractual obligations on this basis. Regardless, this fact-intensive inquiry is inappropriate for resolution on a motion to dismiss. Thus, as set forth in further detail below, each of Defendants' arguments should be rejected, and Plaintiffs should be allowed to prove their claims on the merits.

## FACTUAL BACKGROUND

### A.      The Parties Agree to Work Together

Born in Oman, educated in the United States and employed in the financial industry, Sharma developed a global network of investors and entrepreneurs throughout the United States and the Middle East. In March 2011, Sharma formed Antares to service this network. Antares provides market research, finder and consulting services in the financial and social media

sectors.  Until July 2011, the Plaintiffs conducted all of their business from New York City.  (Am. Compl. ¶¶ 21, 22, 27-34.)[1]

In September 2010, Bartholomew told Sharma that he and his company, Galt, were raising money for certain social media funds, including GIF and, later, the SPV.  (*Id.* ¶ 37.)  Defendants were doing so through a sales office at 757 Third Avenue in New York City, which was run by Devin P. Laden.  (Declaration of Saransh Sharma ("Sharma Decl.") ¶¶ 3-4, Ex. 1.)  Although Mr. Laden served as Defendants' "National Sales Manager," he was not registered as a broker.  (Sharma Decl. ¶ 16, Ex. 3.)  According to a press release, a New York-based broker-dealer, John Thomas Financial, successfully raised $33 million for the SPV.  (Sharma Decl. Ex. 2.)

GIF invests primarily in shares of social media companies, including Facebook, Inc.  The SPV focuses on investing exclusively in shares of Facebook.  In 2010, Facebook was a private social networking company whose shares could be purchased only from insiders.  Because Facebook was expected to make an initial public offering that could result in the appreciation of its shares, Facebook's shares were in high demand.  Defendants recognized that Plaintiffs offered valuable connections to both potential investors and potential sellers of shares of social media companies, including Facebook.  (Am. Compl. ¶¶ 35-45.)

Plaintiffs and Defendants agreed to work together as partners in a joint venture and share expenses and losses.  In the course of the joint venture, Sharma became a shareholder of Galt.  Sharma subsequently agreed to exchange his shares in Galt for shares in a related company called Equinox Galt Capital Partners, LLC.  (*Id.* ¶¶ 46-53.)

---

[1]     The Amended Complaint and exhibits are attached as Exhibit A to the Declaration of Ryan K. Cummings.

**B.      Defendants Reject a $310 Million Investment to Avoid Paying Plaintiffs**

Over the next several months, Plaintiffs attempted to introduce multiple parties to Defendants, including Juthoor Corporation.  On or about April 14, 2011, Bartholomew e-mailed Sharma and expressed his view that attracting investors to GIF was "still the way to go." Bartholomew stated that, if they could just find an investor interested in contributing at least $50 million, then "off we go."  (*Id*. ¶¶ 54-58, 60-62; Bartholomew Decl. Ex. B.)  On or about April 23, 2011, Bartholomew sent another e-mail to Sharma in which he reiterated the agreement to split equally any fees generated from investors introduced by Plaintiffs: "if you have any capital source that we can push to the fund fee split of 50% to the capital and the pitch is we have access to FB [Facebook] stock at $23-25/share . . . ."  (Am. Compl. ¶¶ 63-64; Bartholomew Decl. Ex. C.)

Relying on the promises made by Defendants, Plaintiffs continued to spend their time and resources to find potential investors for GIF.  In January 2012, Plaintiffs met with Juthoor and offered once again to introduce Juthoor to Defendants.  On January 10, 2012, Juthoor executed the LOI.  The LOI is addressed to Sharma and Antares in New York.  In the LOI, Juthoor stated its interest in investing in "Global Innovation Fund, Ltd." managed by "Galt Global Capital, Inc."  Juthoor indicated its interest in investing sufficient capital in the fund to purchase ten million shares of Facebook at a price of $31 per share or less and expressed its willingness to pay a front-end fee of ten percent, or $31 million, in addition to a performance fee of 20 percent of any profits.  Juthoor concluded the letter by writing, "We look forward to consummating this investment as soon as possible."  (Am. Compl. ¶¶ 65-73, Ex. 1.)

On or about January 11, 2012 Plaintiffs attempted to present the LOI to Defendants.  The LOI met all the terms sought by Defendants.  Juthoor was a ready, willing and able investor.

The fees generated by Juthoor were guaranteed to be a minimum of $31 million.  Pursuant to their agreement, Plaintiffs and Defendants would each receive half of this fee, or $15.5 million.  (*Id.* ¶¶ 74-79.)  Notwithstanding the agreement between the parties and Defendants' repeated pleas for Plaintiffs' assistance in raising capital, Defendants refused to consider Juthoor as an investor.  Defendants rejected Juthoor in bad faith because Defendants did not wish to share any fees with Plaintiffs.  (*Id.* ¶¶ 80-82.)

**C.      Defendants Breach the Non-Circumvention Agreement**

Several months earlier, on September 24, 2011, the parties had signed a Mutual Non-Disclosure and Non-Circumvention Agreement (the "Non-Circumvention Agreement").  The Non-Circumvention Agreement provides that, except as expressly agreed, the parties shall refrain from using each other's confidential information, including each other's "business relationships," "business contacts, opportunities and prospects."  The Non-Circumvention Agreement further provides that neither party may "make any contact or deal with any legal entity or individual identified or introduced to him by the other Party regarding a proposed or potential transaction, without the express, written permission of the other Party, during the Term hereof and for a period of three (3) years from the expiration or termination hereof."  (Am. Compl. ¶¶ 84-88, Ex. 2.)

The Non-Circumvention Agreement includes a choice of law clause that applies New York law to disputes among the parties and a forum selection clause that selects New York as the venue for such disputes.  Bartholomew executed the Non-Circumvention Agreement on behalf of Galt and "its affiliates, directors, officers, employees, representatives, agents and advisors."  (Am. Compl. ¶¶ 89-91, Ex. 2.)

On February 7th, 2012, Plaintiffs were approached by European Financial Products Group ("EFG"), a private bank headquartered in Switzerland. EFG indicated its interest in acquiring up to 20 million shares of Facebook and agreed to pay Plaintiffs $1.50 per share for any introductions that led to EFG's purchase of Facebook shares. Plaintiffs stood to earn up to $30 million dollars for any successful introductions. Plaintiffs devoted time and effort to making introductions for EFG and, on February 17th, 2012, organized a call between EFG and Bartholomew concerning EFG's potential investment in the SPV. (Am. Compl. ¶¶ 92-97.)

Without permission from Plaintiffs, Defendants subsequently communicated directly with EFG concerning EFG's potential investment in the SPV. Defendants made false and defamatory statements about Plaintiffs competence during these communications and urged EFG to terminate Plaintiffs as finders. (Am. Compl. ¶¶ 98-101.) Plaintiffs sent a cease and desist letter to Defendants, directing them to terminate their direct communications with EFG and notifying Defendants they were violating the Non-Circumvention Agreement. Defendants did not respond and continued to solicit EFG as an investor in the SPV. As a consequence of Defendants' actions, EFG canceled its agreement with Plaintiffs. (Am. Compl. ¶¶ 102-05.)

**D.      Plaintiffs File this Action and Serve All Defendants**

On June 22, 2012, the Plaintiffs filed this action in New York State Supreme Court. Plaintiffs followed the protocols established under the Hague Convention and served both Galt and GIF in the Cayman Islands on July 16, 2012. (Declaration of Justin M. Sher ("Sher Decl.") Exs. A, B.)

Plaintiffs attempted to serve Bartholomew at his residence in Canada. Process servers visited Bartholomew's apartment building on three initial occasions but were told each time that

Bartholomew was unavailable.  (*Id.* Exs. C, D.)  Based on Bartholomew's evasive tactics, the process server concluded that "it is unlikely personal service will be possible."  (*Id.* Ex. D.)

On August 13, 2012, Defendants removed the lawsuit to this Court and, on August 16, moved to dismiss the original Complaint.  On August 31, 2012, Plaintiffs filed the Amended Complaint, which, among other things, added the SPV as a defendant.

On September 11, 2012, Plaintiffs' counsel directed Plaintiffs' process servers to serve the Amended Complaint on the SPV and, for a fourth attempt, on Bartholomew.  On October 11, 2012, the SPV was served in the Cayman Islands using the same method approved by the Hague Convention that was employed to serve GIF and Galt.  (*Id.* Ex. E.)  In their fourth attempt, Plaintiffs successfully served Bartholomew on October 2, 2012 by going through the Canadian central authority.  (*Id.* Ex. F.)

<u>**ARGUMENT**</u>

I.      <u>**THIS COURT HAS PERSONAL JURISDICTION OVER GIF AND THE SPV**</u>

a.      <u>**Applicable Standards Under Rule 12(b)(2)**</u>

On a motion to dismiss for lack of personal jurisdiction, where no jurisdictional discovery has taken place, a plaintiff need make "only a prima facie showing of jurisdiction" based on his own pleadings, affidavits and evidentiary submissions.  *See Muente v. M1 Support Services, L.P.*, No. 11 Civ. 6420 (TPG), 2012 WL 3758448, at *3 (S.D.N.Y. Aug. 30, 2012) (Griesa, J.) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).  Although it is the plaintiff's burden to make this showing, the court presumes the truth of the complaint's allegations, construes the complaint in its most favorable light, and resolves all doubt in favor of the plaintiff. *Id.*

In diversity cases, personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York.  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  If New York's requirements are met, a court must then decide whether the exercise of jurisdiction comports with due process.  *See Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999).

**b.      Galt and Its Affiliates Consented to Jurisdiction in New York**

The Court need not analyze New York's jurisdictional statutes because Galt expressly consented to jurisdiction in New York on behalf of itself and its "affiliates."  By executing a contract that contains a forum selection clause, a party will be deemed to have consented to personal jurisdiction in that forum unless it is "clearly shown that enforcement would be unreasonable and unjust."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (internal quotations and citations omitted).  A forum selection clause may also bind non-parties to a contract if the relationship between the non-party and the signatory is sufficiently close such that enforcement of the forum selection clause is foreseeable.  *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369-70 (S.D.N.Y. 2011) (Scheindlin, J.).

In discerning whether parties are "closely related," courts look to whether the non-signatory may receive any pecuniary benefit from the contract.  *Id.* at 369.  Thus in *Optimal*, the court held that a forum selection clause in an agreement signed by a Bahamian bank applied to the bank's "affiliates," including its investment advisor.  *Id.* at 369-70.  *See also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir. 1993) (applying forum selection clause to affiliated entities who were beneficiaries of agreement even though they themselves had not signed contract); *Excel Mktg. Solutions, Inc. v. Direct Fin. Solutions, LLC*, No. 3:11 CV 0109-D, 2011 WL 1833022, at *7 (N.D. Tex. May 13, 2011) (holding that Excel was bound by a forum selection

clause contained in a nondisclosure agreement ("NDA") even though Excel itself had not signed the NDA).

Although Defendants make no mention of the clauses in their Motion, two of the contracts executed by the Defendants contain forum selection clauses.  The Non-Circumvention Agreement, which was executed on behalf of Galt and "its affiliates, directors, officers, employees, representatives, agents and advisors," (Am. Compl. Ex. 2 at 1), contains a forum selection clause that provides:

> The parties expressly hereby submit to the non-exclusive jurisdiction of the federal and state courts having venue in New York.  Each party hereby irrevocably waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to laying of the venue of any proceeding brought in any such court and any claim that any such proceeding has been brought in an inconvenient forum.

(Am. Compl. Ex. 2 ¶ 9.)

A second agreement, which Defendants introduce in their Motion, the Term Sheet and Release Agreement (the "Term Sheet"), contains similar provisions.  Like the Non-Circumvention Agreement, the Term Sheet purports to apply to Galt and its "affiliates." (Bartholomew Decl. Ex. A ¶ 8.)  Like the Non-Circumvention Agreement, the Term Sheet designates New York as the appropriate forum:  "The state and Federal courts sitting in New York County, New York shall be the exclusive forum for the resolution of any disputes hereunder."  (*Id.* ¶ 13.)

The "affiliates" of Galt referenced in the Non-Circumvention Agreement and the Term Sheet include both GIF and the SPV.  Galt and Bartholomew organized both funds.  (Sharma Decl. ¶ 7.)  Galt serves as the investment advisor to both funds, and Galt's office in New York served as the headquarters for recruiting agents to raise money for both funds.  (*Id.* ¶¶ 4, 8.)  The Non-Circumvention Agreement in particular was executed for the precise purpose of exploring

"certain business and investment opportunities . . . primarily focused on the sourcing and acquisition of private Facebook Shares."  (Am. Compl. Ex. 2 at 1.)  Because GIF and the SPV were the only vehicles for such investment opportunities, the Non-Circumvention Agreement necessarily contemplated some pecuniary benefit for GIF and the SPV.

Moreover, as in *Optimal*, Plaintiffs' claims against GIF and the SPV, including claims of breach of contract and tortious interference, arise directly or indirectly from the Non-Circumvention Agreement itself.  And Defendants appear to base one of their defenses on a release contained in the Term Sheet (even though the Term Sheet was executed four months before the Non-Circumvention Agreement).  On these facts, GIF and the SPV are closely related to Galt and should be bound by the forum selection clauses contained in both the Non-Circumvention Agreement and the Term Sheet.

### c.       GIF and the SPV Are Engaged in Continuous Business in the State

Even if they are not bound by the forum selection clauses discussed above, GIF and the SPV are subject to personal jurisdiction in New York.  A foreign corporation is subject to general personal jurisdiction under N.Y. C.P.L.R. § 301 if it is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Landoil Resources Corp. v. Alexander and Alexander Svcs., Inc.*, 918 F.2d 1039, 1043 (2nd Cir. 1990) (internal quotations and citations omitted).  In assessing jurisdiction under this standard, New York courts have generally focused on the existence of an office in New York, the solicitation of business in New York, the presence of bank accounts or other property in New York, and the presence of employees or agents in New York. *Id.* at 1043.  Moreover, under the "solicitation-plus" test, once it is established that a defendant corporation is engaged in

solicitation, "very little else" is required to establish that it is "doing business" in New York. *Bicicletas Windsor, S.A. v. Bicycle Corp. of Am.*, 783 F. Supp. 781, 785 (S.D.N.Y. 1992).

The presence and activities that satisfy the requirement of doing business can be predicated upon activities performed for a foreign corporation by an agent. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (holding that defendant's activities through a subsidiary's investor relations office in New York were sufficient to establish general jurisdiction). A court may thus assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity, which renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available. *Id. See also Laufer v. Ostrow*, 55 N.Y.2d 305, 311-12, 434 N.E.2d 692 (N.Y. 1982) (foreign corporation was subject to general personal jurisdiction even though it did not maintain an office, telephone or bank account in New York because its sales representatives provided certain services and engaged in systematic and continuous solicitation in New York); *Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 27 (S.D.N.Y. 1991) (despite lacking an office, phone or license to do business in New York, Dartmouth College's solicitation of students, coupled with its financial relationship with two banks, subjected it to general jurisdiction in New York).

In this case, GIF and the SPV maintained a continuous and systematic presence in New York. GIF and the SPV operated through a sales office in New York where their "National Sales Manager," Devin P. Laden, recruited agents to market and sell both funds. (Sharma Decl. ¶ 4.) Indeed, in a posting on an Internet forum, Defendants specifically sought agents to market and sell "Global Innovation Fund" and directed interested persons to contact Mr. Laden at a "212" phone number at Galt's office at 757 Third Avenue in Manhattan. (*Id.* Ex. 1.) Based on this

document alone, it is clear that GIF operated through an office in New York, had at least one agent located in New York and solicited both employees and investments in New York.

The SPV benefited from these same resources and engaged in the same activities. (*Id.* ¶ 4.) Indeed, these activities appear to have been rewarded. According to a press release, the SPV raised over $33 million from investors through John Thomas Financial, a "broker-dealer and investment banking firm headquartered in New York City's Wall Street district." (*Id.* ¶ 5, Ex. 2.) Plaintiffs are not aware of any additional capital being raised by the SPV. (*Id.* ¶ 6.) Thus, one of the SPV's primary functions – raising capital for investment – appears to have been done exclusively in New York.

### d.    Plaintiffs' Claims Arise Out of GIF and the SPV's Contacts in the Forum

Even if GIF and the SPV's activities in New York do not give rise to general jurisdiction under N.Y. C.P.L.R. § 301, GIF and the SPV are subject to specific jurisdiction under New York's long-arm statute. Section § 302(a)(1) provides for personal jurisdiction over non-domiciliary defendants in any action "arising from" defendants' "transaction of business within New York State." *Gaind v. Pierot*, No. 04 Civ. 9407 (TPG), 2006 WL 846268, at *5 (S.D.N.Y. March 31, 2006) (Griesa, J.). Under certain circumstances, a single phone call to the forum is enough to sustain jurisdiction. *See Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 17-18, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506, 508 (N.Y. 1970) (holding that non-resident defendant who called in a bid to a New York auction projected himself into the forum).

There can be no dispute that Plaintiffs' claims against GIF and the SPV arise from their transaction of business with Plaintiffs in New York. When the parties agreed to work together, and for the majority of their business relationship, Plaintiffs were headquartered in New York and negotiated the terms of their agreements from New York. Until July 2011, when Plaintiffs

relocated, Defendants expected Plaintiffs to perform their services from New York.  As evidence of this, Juthoor addressed its letter of intent to Plaintiffs in New York.  (Am. Compl. Ex. 1.) Defendants' e-mails, in which they promised to pay Plaintiffs finders' fees, were received by Plaintiffs in New York.[2]  Sharma met Bartholomew in New York in February 2011, in part, to discuss their joint efforts concerning GIF.  (Sharma Decl. ¶ 11.)  Finally, as the Non-Disclosure Agreement and Term Sheet make clear, the parties' agreements contemplated the application of New York law and the litigation of any disputes in New York.

  **e.**  <u>**Jurisdiction Over GIF and the SPV Comports with Due Process**</u>

  The Court's exercise of jurisdiction over GIF and the SPV also comports with due process.  Due process requires plaintiffs to allege jurisdictional facts sufficient to establish first, that the defendants had "minimum contacts" with New York and second, that asserting personal jurisdiction in light of the circumstances of this action comports with "traditional notions of fair play and substantial justice."  *Gaind*, 2006 WL 846268, at *6 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Satisfaction of the criteria set forth in § 302(a)(1) will generally meet federal due-process requirements.  *Id.* (holding that substantial business activities conducted by defendants and substantial revenue derived from such activities satisfied due process test).  The facts set forth above, including the substantial revenue raised by the SPV in

---

[2]  The fact that these e-mails came from Bartholomew does not negate the fact that he was binding GIF and the SPV as their agent.  *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40 (N.Y. 1988) (holding that, under N.Y. C.P.L.R. § 302, defendant can be subjected to jurisdiction by transacting business "through an agent," provided that the agent engaged in purposeful activities in New York for the benefit of the defendant and the defendant exercised some control over the agent.)

New York, demonstrate that GIF and the SPV had minimum contacts with New York and that it would be reasonable to subject them to jurisdiction here.[3]

## II.    **PLAINTIFFS HAVE SERVED BARTHOLOMEW AND THE SPV**

Defendants next seek dismissal of Plaintiffs' claims against Bartholomew and the SPV on the grounds that they have not been served.  Since Defendants' filed their Motion, however, both parties have been formally served.  An individual may be served in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention. . . ."  FED. R. CIV. P. 4(f).  Rule 4(m) expressly exempts service in foreign countries from the 120-day limit, which applies to defendants located in the United States, as long as the plaintiff attempts to serve the defendant in the foreign country.  *See USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005).

As set forth above, notwithstanding Bartholomew's efforts to evade service, Plaintiffs served Bartholomew with process in Canada pursuant to the Hague Convention on October 2, 2012.  (Sher Decl. Ex. F.)  Several days later, on October 11, 2012, Plaintiffs served the SPV in the Cayman Islands pursuant to the Hague Convention.  (*Id.* Ex. E.)  There is thus no basis to dismiss Plaintiffs' claims against Bartholomew and the SPV pursuant to Rule 12(b)(5).

## III.    **PLAINTIFFS HAVE STATED CLAIMS AGAINST DEFENDANTS**

The Court should reject Defendants' arguments under Rule 12(b)(6) that none of Plaintiffs' claims states a plausible cause of action.  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Matson v. Board of Educ. of City School Dist. of New York*, 631 F.3d 57,

---

[3]     Plaintiffs submit the facts set forth above provide prima facie evidence of jurisdiction over GIF and the SPV.  Discovery would likely allow Plaintiffs to identify more such facts.  Thus, to the extent the Court finds this evidence insufficient, Plaintiffs respectfully request an opportunity to take discovery.

63 (2d Cir. 2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed.

2d 868 (2009)).   A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  While a complaint requires "more than an unadorned, the defendant-unlawfully-

harmed-me accusation," it need not contain "detailed factual allegations."  *Id.*  A court should

thus dismiss a complaint "only if it appears beyond doubt that the plaintiff can prove no set of

facts in support of [his] claim which would entitle [him] to relief."  *Id.*

       **a.**     **<u>Breach of Contract Claims</u>**

      To state a claim for breach of contract, plaintiff must allege "(1) an agreement, (2)

adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  *Shelton v.

Sethna,* No. 10 Civ. 4128 (TPG)*,* 2012 WL 1022895, at *4 (S.D.N.Y. Mar. 26, 2012) (Griesa, J.)

(internal citations omitted).  The implied covenant of good faith and fair dealing "is implied in

all contracts" and "embraces a pledge that neither party shall do anything which will have the

effect of destroying or injuring the right of the other party to receive the fruits of the contract."

*Id.* at *7 (citing *Fishoff v. Coty, Inc.*, 634 F.3d 647, 653 (2d Cir.2011)).  A breach of the implied

covenant of good faith and fair dealing "is merely a breach of the underlying contract" and

should not be stated as a separate, "freestanding cause of action."  *Id.*

      New York law permits a finder to recover a fee when a deal is not consummated if the

deal is prevented by the defendant's bad faith.  *See Nuvest S.A. v. Gulf & W. Industries, Inc.*, 649

F.2d 943, 945, 949-50 (2d Cir. 1981) (finder may recover if a "meeting of the minds and the final

execution of the formal contract was prevented by the [seller's] bad faith conduct").  Even in the

absence of bad faith, a finder may be entitled to his fee where a party has "wrongfully or

arbitrarily prevented completion" of the transaction.  *Trylon Realty Corp. v. Di Martini*, 34

N.Y.2d 899, 900, 316 N.E.2d 718, 718 (N.Y. 1974) ("bad faith is not necessarily an essential

ingredient to the finding of wrongful prevention").  Unless the agreement expressly provides

otherwise, a finder or broker "earns his commission when he produces a buyer ready, willing,

and able to purchase at terms set by the seller."  *Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d

805, 807 (2d Cir. 1985); *see also India.com, Inc. v. Dalal*, 324 Fed. Appx. 59, 60-62 (2d Cir.

2009) (holding that plaintiff, who produced a ready, willing and able buyer, was entitled to a fee

even though the deal did not close and closure was a condition to the fee).  Thus, in *Nuvest*, the

plaintiff was entitled to a finder's fee where a defendant "purposely effected an impasse" over

customary terms "in order to avoid paying a finder's fee."  *Nuvest*, 649 F.2d at 946-50.

        In their Motion, Defendants selectively quote from the Amended Complaint and then

argue that the contract described is insufficiently specific to support a plausible cause of action.

But Plaintiffs describe two e-mails from April 2011, which Defendants attach to their Motion,

that provide the material terms of their agreement.  In the first e-mail, Bartholomew asks

Plaintiffs to help the Defendants find an investor to contribute $50 million if "you still want to

work on this with Trevor and I."  (Am. Compl. ¶¶ 60-62; Bartholomew Decl. Ex. B.)  Trevor

Michael is a managing partner of Galt and an advisor and agent for GIF and the SPV.  (Sharma

Decl. ¶ 9.)  In the second e-mail, Defendants make it clear they were prepared to share a "fee

split of 50%" each if Plaintiffs had "any capital source that we can push to the fund . . . and the

pitch is we have access to FB stock at $23-25/share. . . ."  (Am. Compl. ¶¶ 63-64; Bartholomew

Decl. Ex. C.)

        These e-mails support the reasonable inference that Bartholomew, acting on behalf of

Galt, GIF and the SPV, promised to compensate Plaintiffs for finding investors for GIF and the

SPV.  This agreement – one of several during the course of their joint venture – was reached in

April 2011 and obligated Defendants to accept any investor who offered to invest $50 million or more in shares of Facebook at a price of $23 per share or higher.  Defendants breached this contractual obligation and breached the implied covenant of good faith and fair dealing by refusing to consider Juthoor and purposefully driving away EFG, both ready, willing and able investors.  (Am. Compl. ¶¶ 116-27.)  Plaintiffs allege that Defendants committed these breaches in order to avoid sharing fees with Plaintiffs.  (*Id.* ¶¶ 106, 118, 193, 196.)  At a minimum, these allegations support a plausible claim for relief.

Equally plausible are Plaintiffs' allegations, in their second claim for relief, that Defendants breached the Non-Circumvention Agreement.  Plaintiffs allege that each of the Defendants breached the Non-Circumvention Agreement, which expressly applies to Galt and all of its "affiliates," by communicating directly with EFG after Plaintiffs introduced EFG to Defendants.  (*Id*. ¶¶ 90, 98-11, 128-140.)  Defendants do not deny such communications would have breached the Non-Circumvention Agreement.  Instead, Defendants suggest that Plaintiffs' allegations of damages are inadequate.  But Plaintiffs specifically allege that Defendants' unlawful communications with EFG, which included false statements about Plaintiffs, caused EFG to abandon a deal that would have generated $30 million in fees.  (*Id*. ¶¶ 98-101, 105, 137-140.)  While Defendants are free to challenge Plaintiffs' theory of damages at trial, there is nothing deficient about these allegations.  *See, e.g. Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 672 (W.D.N.Y. 2010) (holding that plaintiff who alleged direct and consequential damages, such as lost profits and lost business opportunities, "[c]learly . . . stated a claim for breach of contract.")

Defendants also attack Plaintiffs' breach-of-contract claims on the grounds they are barred by a release contained in the Term Sheet.  Defendants' argument introduces a document

that is not directly referenced in the Complaint and thus is more appropriate for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"). Regardless, the Term Sheet is dated March 23, 2011 and purports to release only those claims that arose "prior to the date hereof." (Bartholomew Decl. Ex. A ¶ 8.) As noted above, the agreement on which Plaintiffs base their first cause of action was entered into one month later, in April 2011, and the alleged breaches took place in January and February 2012. (Am. Compl. ¶¶ 66-73, 92-97.) Similarly, the Non-Circumvention Agreement is dated six months after the Term Sheet, on September 24, 2011, and the breaches at issue occurred in February and March 2012. (Am. Compl. ¶¶ 84, 92-104, Ex. 2.) Thus, even if the Court determined that the parties intended to be bound by it, the Term Sheet could not have released Defendants from the claims at issue in this action.

### b.      Breach of Fiduciary Duty Claims

Defendants next attack Plaintiffs' claims of breach of fiduciary duty, arguing that Plaintiffs fail to adequately allege the joint venture that gave rise to the fiduciary relationship. Specifically, Defendants argue, "[a]t no point do plaintiffs allege joint control or management of Galt, GIF or SPV." (Motion at 13.) Defendants appear to ignore multiple paragraphs of the Amended Complaint. For example, Plaintiffs allege the parties agreed to work together as partners, share their connections in order to facilitate deals, "share expenses and losses associated with their joint venture" and "agreed to jointly manage the venture." (Am. Compl. ¶¶ 46-50, 143-146.) The parties worked together so closely that, at Defendants' suggestion, Sharma

became a shareholder of Galt.  (*Id.* ¶¶ 51-51.)  In fact, the Term Sheet, which Defendants

themselves rely on in their Motion, anticipates the formation of a new Delaware limited liability

company, Equinox Galt Capital Partners LLC, of which both Sharma and Galt would own one-

third.  (Bartholomew Decl. Ex. A ¶¶ 1-2.)  This relationship alone would give rise to a fiduciary

relationship.  *See, e.g.*, *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Technologies Inc.*,

854 A.2d 121, 153-154 (Del. Ch. 2004) (denying motion to dismiss claims of breach of fiduciary

duty brought by member of Delaware limited liability company against other members).

Defendants next argue that certain forward-looking language contained in the Non-

Circumvention Agreement, which suggests the parties were "interested in considering" future

business and investment opportunities, demonstrates that, "as of that date, there was no business

relationship between the parties."  (Motion at 13.)  This is a highly fact-dependent argument that

is premature in the context of a motion to dismiss.  Indeed, the two cases cited by Defendants in

support of dismissal of Plaintiffs' fiduciary duty claims – *Scott v. Rosenthal*, No. 97 Civ. 2143

(LLS), 2001 WL 282712 (S.D.N.Y. Mar. 22, 2001) and *Kidz Cloz, Inc. v. Officially For Kids,

Inc.*, 320 F. Supp. 2d 164 (S.D.N.Y. 2004) – involve post-discovery motions for summary

judgment, not motions to dismiss.  Moreover, Defendants' contention is belied once again by the

Term Sheet, which acknowledges the existence of a "previous arrangement, agreement or

understanding" as of March 23, 2011, months before the parties executed the Non-

Circumvention Agreement.  (Bartholomew Decl. Ex. A ¶5.)  Thus, in addition to being

premature, Defendants' fact-dependent arguments are inaccurate.

      **c.**      **<u>Quantum Meruit, Unjust Enrichment, and Estoppel Claims</u>**

Defendants next seek dismissal of Plaintiffs' equitable claims on the grounds that

Plaintiffs cannot maintain a "breach of contract claim and a quasi-contract claim at the same

19

time." (Motion at 14.)  The case cited by Defendants for this proposition, *Apfel v. Prudential-Bache Sec. Inc.*, 81 N.Y.2d 470, 479, 616 N.E.2d 1095 (N.Y. 1993), involved cross-motions for summary judgment, not a motion to dismiss, and the court dismissed the plaintiff's quasi-contract claims only after it had rejected Defendants' challenges to "the existence of a valid contract." *Id.*  As long as Defendants continue to challenge the existence of a valid contract, Plaintiffs are free to allege alternative theories of liability that include both breach-of-contract and quasi-contract claims.  *See Marcella v. ARP Films, Inc.*, 778 F.2d 112, 117 (2d Cir.1985) (ruling that a "plaintiff may quite properly submit" alternative theories of breach of contract and quantum meruit); *see also Contractual Obligation Productions, LLC v. AMC Networks, Inc.,* No. 04 Civ. 2867 (BSJ) (HBP), 2006 WL 6217754, at *7 (S.D.N.Y. Mar. 31, 2006) (holding that motion to dismiss quantum meruit and quasi-contract claims on ground that plaintiff alternatively alleged breach of contract was "misguided at the pleading stage") (collecting cases).

>   d.   **Defamation Claims**

Defendants next argue that Plaintiffs have improperly pled defamation because they have failed to specify the exact words uttered by Defendants.  In support of this contention, Defendants cite, *Gardner v. Alexander-Rent-A-Car*, 28 A.D.2d 667, 280 N.Y.S.2d 595 (1st Dep't 1967), a 55-year old case applying state procedural rules.  But, under the *Erie* doctrine, federal courts sitting in diversity apply federal, not state, procedural law   *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).  Federal courts analyzing defamation claims under New York law have not required absolute specificity: "A plaintiff need not plead a defamatory statement *in haec verba*, but the pleadings must be sufficient to 'afford the defendant sufficient notice of the communications complained of to enable him to defend himself.'"  *D'Annunzio v. Ayken, Inc.*, No. 11 Civ. 3303 (WFK) (WDW),

2012 WL 2906248, at *3 (E.D.N.Y. July 17, 2012) (citing *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir.1986)).  *See also Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738-739 (S.D.N.Y. 2011) ("a complaint for defamation need not be absolutely specific with regard to the statements at issue") (internal citations and quotations omitted).

Here, Plaintiffs have alleged that communications occurred between Defendants and EFG, that the statements were made in February and March 2012 prior to EFG's termination of its finder arrangement with Plaintiff, and that the communications included false statements about Defendants' ability to deliver tradable shares of Facebook and Plaintiffs' competence to perform finder services.  (Am. Compl. ¶¶ 97-105, 173-76.)  Under federal procedure, these allegations afford the defendant sufficient notice of the communications at issue and are thus adequate to state a cause of action for defamation.

Defendants also contend that Plaintiffs have failed to plead special damages.  (Motion at 15.)  This is incorrect.  Under New York law, a claim for defamation must allege either defamation per se or a special harm.  *D'Annunzio,* 2012 WL 2906248, at *3.  A statement that "tend[s] to injure another in his or her trade, business or profession" is defamatory per se.  *Stern v. Cosby*, 645 F. Supp. 2d 258, 273 (S.D.N.Y. 2009) (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (N.Y. 1992)).  The defamatory statements described in the Amended Complaint constitute defamation per se because they injured Plaintiffs in their trade and business.  In any event, Plaintiffs do allege special damages: the $30 million loss that resulted when EFG, in response to Defendants' defamatory statements, canceled its finder arrangement with Plaintiffs. (Am. Compl. ¶¶ 181, 182.)

e.    **Tortious Interference Claims**

Defendants contend that Plaintiffs' tortious interference claim is inadequate because Plaintiffs fail to allege "wrongful means."  Once again, Defendants appear to ignore several paragraphs of the Amended Complaint.  While a defendant's commission of a crime or an independent tort clearly constitutes wrongful means, such acts are not essential to find wrongful means.  *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).  Wrongful means may include "fraud, misrepresentation, or threats, that the means used violated a duty owed by the defendant to the plaintiff, or that the defendant acted with malice."  *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001) (quoting *Cohen v. Davis*, 926 F. Supp. 399, 403 (S.D.N.Y. 1996).

Plaintiffs allege Defendants made misrepresentations and violated both their fiduciary and contractual duties.  Defendants interfered with Plaintiffs' business relations with EFG by "intentionally excluding Plaintiffs from Defendants' communications with EFG," an independent violation of the Non-Circumvention Agreement.  (Am. Compl. ¶¶ 137-39, 186, 188.)  Defendants communicated with EFG in breach of their fiduciary duty, and made defamatory statements during these communications.  (*Id*. ¶¶ 147-49, 186, 171-82.)  Thus, Plaintiffs have adequately alleged wrongful means.  *See, e.g.*, *Hofmann v. Dist. Council 37, Am. Fed'n of State, County, & Mun. Employees, AFL-CIO*, 99 CIV. 8636 (KMW) (JCF), 2002 WL 31045858, at *4 (S.D.N.Y. May 9, 2002) (recommending denial of motion to dismiss tortious interference claims where plaintiffs asserted that "defendants defamed them by presenting false criticisms of their performance").

### f.      Civil Conspiracy Claims

Defendants seek dismissal of Plaintiffs' claim of civil conspiracy on the ground that it is not recognized as a stand-alone tort under New York law.  New York law is "clear," however, that a plaintiff may plead the existence of a civil conspiracy "in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme."  *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 316 (S.D.N.Y. 2010) (internal citations and quotations omitted).  In order to state such a claim, a plaintiff must allege the primary tort and four additional elements: "(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the corrupt agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury."  *Id.* (declining to dismiss claim of civil conspiracy).

Plaintiffs allege underlying torts of breach of fiduciary duty, tortious interference and defamation.  Plaintiffs further allege each of the elements of civil conspiracy:  a corrupt agreement to deny Plaintiffs their finders' fees and interfere with their business relations (Am. Compl. ¶ 193); overt participation in potential deals and communications concealed from Plaintiffs (*Id.* ¶ 194-95); intentional participation to further the purpose of their agreement (*Id.* ¶¶ 196-97); and damages (*Id.* ¶ 198).  Plaintiffs have thus stated claims for civil conspiracy.

## IV.     PLAINTIFFS' FINDER'S FEE CLAIMS DO NOT VIOLATE THE STATUTE OF FRAUDS

Defendants also seek to dismiss those of Plaintiffs' claims which relate to a finder's fee – breach of contract, unjust enrichment, quantum meruit and estoppel – on the grounds that Plaintiffs' claims are barred by New York's Statute of Frauds.  As set forth below, the Statute of Frauds does not apply to the contract at issue and, even if it did, Plaintiffs would satisfy it.

### a.      **The Statute of Frauds Does Not Apply**

The Statute of Frauds was designed to guard against fraudulent claims supported by perjured testimony and "was never meant to be used as a means of evading just obligations based on contracts fairly, and admittedly, made."' *Rail Europe, Inc. v. Rail Pass Express, Inc.*, No. 94 Civ. 1506 (PKL), 1996 WL 157503, at *4 (S.D.N.Y. Apr. 3, 1996) (quoting *Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 574, 245 N.E.2d 712, 715, 297 N.Y.S.2d 947, 952 (N.Y. 1969)).  The provision of the Statute of Frauds on which Defendants rely applies to contracts "to pay compensation for services rendered in negotiating . . . a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest."  N.Y. GEN. OBLIG. LAW § 5-701(a)(10).  Courts have not been entirely consistent in how they define a "business opportunity."  *See Freedman v. Chem. Const. Corp.*, 43 N.Y.2d 260, 266, 372 N.E.2d 12 (N.Y. 1977) (observing that the term has been "differentially applied," and warning that "[t]oo broad an interpretation" would extend the writing to "stockbroker's dealings" while "[t]oo restrictive an interpretation would defeat the purpose of the legislation").

In the context of the purchase of securities, courts have interpreted this language to refer to something beyond a simple investment, such as a transaction through which the purchasing party acquires an "opportunity to engage in the business pursuits of the corporation."  *Clivner v. Ackerman*, 51 Misc. 2d 856, 857-58, 274 N.Y.S.2d 112, 114 (N.Y. Sup. Ct. 1966), *aff'd*, 30 A.D.2d 642, 291 N.Y.S.2d 759 (1st Dep't 1968).  Section 5-701(a)(10) thus generally applies to transactions involving transfers of a majority of stock or transfers of minority interests that provide the purchaser with the right to "dictate the business policies of the corporation."  *Id.* at 857-58, 274 N.Y.S.2d 112, 114.  *See also Hiller v. Franklin Mint, Inc.*, 485 F.2d 48, 50-51 (3d

Cir. 1973) (noting that section 5-701(a)(1) of N.Y. statute of frauds covers "something in the nature of the sale of an entire business or a substantial part thereof") (internal citations and quotations omitted); *Bushkin Assocs., Inc. v. U. S. Filter Corp.*, 79 A.D.2d 367, 368-69, 436 N.Y.S.2d 651, 652 (1st Dep't 1981), *aff'd*, 55 N.Y.2d 763, 431 N.E.2d 970 (N.Y. 1981) (applying § 5-701(a)(10) where the acquired interest was a "significant interest in an enterprise").

In contrast, the placement of shares comprising less than a controlling interest, with no right to affect the policies of the business, is not a "business opportunity" for purposes of the Statute of Frauds. *Sloan v. Stefurak,* 32 B.R. 607 (Bankr. E.D.N.Y. 1983) (*In re Sloan*) (declining to apply New York's Statute of Frauds to a finder's agreement involving the sale of securities). In *Sloan*, the finder earned his fee by introducing a company to an investment firm, which underwrote a public offering of securities. The court held that, since the transaction in question involved an offering of "less than a majority of the voting stock interest . . . this court cannot find as a matter of law that the statute of frauds is applicable in the present context. Rather, Stefurak [the defendant] would have to establish that the stock issue constituted a controlling interest . . . ." *Id.* at 609-10. *See also Braverman v. Metropolis Bowling Centers, Inc.*, 18 A.D.2d 1089, 1089-1090, 239 N.Y.S.2d 581, 582 (2d Dep't 1963) ("an oral contract to pay to plaintiffs, as 'finders', a fee consisting of 2,000 shares of common stock of the defendant Metropolis Bowling Centers, Inc., does not come within the Statute of Frauds"); *Morris Cohon v. Pennsylvania Coal & Coke Corp.*, 10 A.D.2d 667, 668, 197 N.Y.S.2d 125, 127 (1st Dep't 1960) (holding that the Statute of Frauds, as set forth in the predecessor to § 5-701(a)(10), was inapplicable to an oral agreement for commissions because "less than a majority of the voting stock of the corporation" was involved).

In this case, Plaintiffs were engaged as finders to find passive investors interested in purchasing $50 million blocks of shares of Facebook. Facebook is worth tens of billions of dollars. (Sharma Decl. ¶ 12.) Thus, an investment of $50 million, or even $310 million, would not entitle an investor to a controlling interest in Facebook or any ability to shape Facebook's policies. (*Id.* ¶ 13.) Accordingly, the Court should not apply the Statute of Frauds to bar Plaintiffs' claims.

The three cases cited by Defendants for the contrary proposition are inapposite. Unlike this case, *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, involved a full acquisition of one corporation by another. 24 N.Y.2d 372, 375-77, 248 N.E.2d 576 (N.Y. 1969). Moreover, the analysis in *Intercontinental* focused on whether the writings were sufficient to satisfy the Statute of Frauds, not whether the Statute of Frauds applied to the transaction. *Id.* at 378-80. The other two cases cited by Defendants did not involve the sale of securities at all. *See Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 97 (S.D.N.Y. 1997) (involving finder who brought companies together for telecommunications project); *Khreativity Unlimited, Inc. v. Mattel, Inc.*, 242 F.3d 366 (2d Cir. 2000) (involving proposal to outfit Mattel toys with licensed NBA apparel).

### b.      **Defendants' E-Mails Satisfy the Statute of Frauds**

Even if the Statute of Frauds applies to this case, Plaintiffs can satisfy it. E-mails qualify as signed writings as long as they contain "expressly or by reasonable implication" the material terms of the agreement. *Trueforge Global Mach. Corp. v. Viraj Group*, 84 A.D.3d 938, 939, 923 N.Y.S.2d 146, 147 (2 Dep't 2011) (citing N.Y. GEN. OBLIG. LAW § 5-701(b)(4) and holding that e-mails, which calculated the finder's fee as a percentage of the monies to be paid upon fruition of the opportunity, were sufficient to satisfy the Statute of frauds). *See also Stevens v.*

*Publicis, S.A.,* 50 A.D.3d 253, 255-56, 854 N.Y.S.2d 690, 692 (1st Dep't 2008) (holding that e-mails constituted "signed writings within the meaning of the statute of frauds, since plaintiff's name at the end of his e-mail signified his intent to authenticate the content").

In this case, Defendants sent e-mails that satisfied the Statute of Frauds.  In the first e-mail, dated April 11, 2011, Bartholomew, acting on behalf of all Defendants, invited Plaintiffs to help find an investor for "the fund," i.e. GIF, and noted that an investor willing to contribute $50 million would be sufficient.  (Bartholomew Decl. Ex. B.)  In the second e-mail, Bartholomew again stated that he wanted Plaintiffs to find investors for a few "$50M tickets to GIF," and clarified that he was prepared to split the fund fees at "50%."  (Bartholomew Decl. Ex. C.) Sharma responded by noting that JPMorgan was looking for stock on these terms and promising to keep Defendants "posted."  These e-mails, which Defendants fail to meaningfully address in their Motion, contain all the material terms of the parties' finder's fee agreement.

At a minimum, the Court should allow Plaintiffs' equitable claims to proceed.  In similar circumstances, courts have declined to dismiss claims of quantum meruit even in the absence of a writing containing all material terms.  *See Vioni v. American Capital Strategies Ltd.*, No. 08 Civ. 2950 (PAC), 2009 WL 174937, at *5-6 (S.D.N.Y. Jan. 23, 2009) (denying motion to dismiss plaintiff's quantum meruit claim even though finder's agreement failed under the Statute of Frauds); *Learning Annex Holdings, LLC v. Rich Global, LLC,* 09 CIV. 4432 SAS, 2011 WL 2732550 (S.D.N.Y. July 11, 2011) (declining to dismiss plaintiff's claim for quantum meruit, notwithstanding application of Statute of Frauds, where letters acknowledged plaintiff's performance of services); *Morris Cohon & Co.*, 23 N.Y.2d at 574-76, 245 N.E.2d at 715-16 (same).

## V.   PLAINTIFFS MAY RECOVER EVEN IF THEY WERE NOT REGISTERED BROKERS

In their final argument, Defendants seek to dismiss Plaintiffs finder's-fee related claims on the grounds that Defendants were not registered as brokers during a portion of the relevant period.[4]  This argument should be rejected.  The evidence demonstrates that Plaintiffs were finders, not brokers.  And even if the Court accepted Defendants' highly fact-dependent contention that Plaintiffs acted as brokers, the law allows Plaintiffs to recover on their claims.

A "finder" is someone who "finds potential buyers or sellers, stimulates their interest, and brings parties together," while a broker "brings the parties to an agreement on particular terms." *Foundation Ventures, LLC v. F2G, Ltd.*, No. 08 Civ. 10066 (PKL), 2010 WL 3187294, at *6 (S.D.N.Y. Aug. 11, 2010) (citing cases).  In *Foundation Ventures*, the plaintiff agreed to act as the defendant's "exclusive finder" to raise $25 million in capital in return for a percentage of the amount invested.  2010 WL 3187294, at *1.  After evaluating potential investors, participating in conference calls, contributing to marketing materials and attending investor meetings, the plaintiff obtained a "bona fide term sheet" from one potential investor who "met all the qualifications of the Contract."  *Id.* at *2.  The defendant rejected the investor, and the plaintiff sued.  Denying the defendant's motion to dismiss, the court held the defendant could not demonstrate as a matter of law that the plaintiff behaved as a broker rather than a finder.  *Id.* at *2, 7.  *See also, Transparent Value, L.L.C. v. Johnson*, 93 A.D.3d 599, 600, 941 N.Y.S.2d 96 (1st Dep't 2012) (to find contract unenforceable for illegality, question is whether the contract "on its face" requires unregistered finder to perform broker services); *DeHuff v. Digital Ally,*

---

[4]    The documents submitted by Defendants indicate that Sharma was registered as a broker from February 2004 through October 2010 and then allowed his registration to lapse before renewing it in March 2012.  As set forth above, Defendants' submission of extraneous material is contrary to the purpose of a motion to dismiss and more appropriate for summary judgment.  *Chambers*, 282 F.3d at 154.

*Inc.*, No. 3:08 Civ. 327 (TSL) (JSC), 2009 WL 4908581, at *3-4 (S.D. Miss. Dec. 11, 2009) (denying corporation's motion for summary judgment based on plaintiff's failure to register as a broker because plaintiff's "level of participation" in the deal created an issue of fact).

In this case, the Amended Complaint alleges involvement that is more passive than the activity in *Foundation Ventures.* Plaintiffs communicated with Juthoor and other investors about introducing them to Defendants. Although Plaintiffs received a letter of intent from Juthoor, Plaintiffs do not allege they were involved in negotiating its terms or that they helped prepare marketing documents, participated in conference calls or attended investor meetings. Because the allegations support the inference that Plaintiffs acted as finders, the Amended Complaint should not be dismissed.

Even if the Court accepts Defendants' contention that the allegations demonstrate Plaintiffs acted as unregistered brokers, dismissal would be premature. A contract may be rescinded or voided under Section 29(b) only by an "unwilling innocent." *Foundation Ventures,* 2010 WL 3187294, at *6-7. Where the party seeking to rescind a contract "willingly entered into the questioned contract and knew of all the facts" which it now claims are improper, that party should not be able to "invoke the provisions of section 29(b) to challenge the contract." *Buffalo Forge Co.*, 555 F. Supp. 892, 906 (W.D.N.Y. 1983), *aff'd*, 717 F.2d 757 (2d Cir. 1983) (upholding dismissal of a rescission action under section 29(b) where plaintiffs were not "unwilling innocent[s]").

Plaintiffs intend to demonstrate that Defendants were aware that Plaintiffs were not registered as brokers. In fact Bartholomew, and Defendants' other agents, including their "National Sales Manager," were themselves unregistered as brokers. Moreover, Sharma chose not to obtain employment with a registered broker-dealer during a portion of the period, in part,

because of the advice he received from Bartholomew.  This would disqualify them as unwilling participants.  (Sharma Decl. ¶¶ 14-16.)

Finally, even if Defendants are correct that Plaintiffs cannot enforce their finder's agreement because they acted as unregistered brokers, they would still be able to pursue their equitable claims of unjust enrichment and quantum meruit.  *See Foundation Ventures*, 2010 WL 3187294, at *8 (denying motion to dismiss unjust enrichment claim in light of defendant's argument that plaintiff's status as an unregistered broker rendered their agreement invalid); *Vioni,* 2009 WL 174937, at *6 (denying motion to dismiss quantum meruit claim and holding that finder's failure to register as a broker did not preclude her from seeking compensation for services rendered.)

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss the Amended Complaint and allow Plaintiffs an opportunity to prove their claims.

Dated:  New York, New York
        November 5, 2012

                   SHER TREMONTE LLP


                   By:  /s/ Justin M. Sher
                      Justin M. Sher
                      Michael Tremonte
                41 Madison Avenue, 41st Floor
                New York, New York 10010
                Tel: 212.202.2600
                Fax: 212.202.4156
                jsher@shertremonte.com
                mtremonte@shertremonte.com

                *Attorneys for Plaintiffs Antares Management LLC*
                *and Saransh Sharma*